# EXHIBIT A

# UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

A. NAME & PHONE OF CONTACT AT FILER (optional)
Phone: (800) 331-3282 Fax: (818) 662-4141

B. E-MAIL CONTACT AT FILER (optional)
CLS-CTLS_Glendale_Customer_Service@wolterskluwer.com

C. SEND ACKNOWLEDGMENT TO: (Name and Address)   32889 - FOX CAPITAL

CT Lien Solutions
P.O. Box 29071
Glendale, CA 91209-9071

59022292
NVNV

File with: Secretary of State, NV

CT Lien Solutions
Representation of filing

**This filing is Completed**
File Number : 2017014225-9
File Date : 23-May-2017

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S NAME: Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| Betra MFG Co | | | | |
| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| | | | | |
| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 45 Affonso Dr | Carson City | NV | 89706 | USA |

2. DEBTOR'S NAME: Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| | | | | |
| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| Thomas | Suzanne | | | |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 47 Affonso Dr | Carson City | NV | 89706 | USA |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| Fox Capital Group Inc | | | | |
| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| | | | | |
| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 140 Broadway, 46th Fl | New York | NY | 10005 | USA |

4. COLLATERAL: This financing statement covers the following collateral:
All assets now or hereafter acquired and wherever located , including but not limited to , the following subcategories of assets:
a. Accounts , including but not limited to , credit car receivables b.chattel paper c. inventory d. equipment e. instruments , including but not limited to , promissory notes ; f. investment property ; g. documents h. deposit accounts ;i. letter of credit rights; j.general intangibles ; k. supporting obligations; proceeds pf products of the forgoing .
NOTICE PURSUANT TO AN AGREEMENT
BETWEEN DEBTOR AND SECURED PARTY , DEBTOR HAS AGREED TO FURTHER ENCUMBER THE COLLATERAL DESCRIBED HEREIN , THE FURTHER ENCUMBERING OF WHICH MAY CONSTITUTE THE TORTUOUS INTERFERENCE WITH T HE SECURED PARTY'S RIGHT BY SUCH ENCUMBRANCE

IN THE EVENT THAT ANY ENTITY IS GRANTED A SECURITY INTEREST IN DEBTOR'S ACCOUNTS , CHATTEL , PAPER OR GENERAL INTANGIBLES CONTRARY TO THE ABOVE , THE SECURED PARTY'S ASSERTS A CLAIM TO ANY PROCEEDS THEREOF RECEIVED BY SUCH ENTITY .

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

6a. Check only if applicable and check only one box:
☐ Public-Finance Transaction   ☐ Manufactured-Home Transaction   ☐ A Debtor is a Transmitting Utility

6b. Check only if applicable and check only one box:
☐ Agricultural Lien   ☐ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer ☐ Bailee/Bailor ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:
59022292                    003

FILING OFFICE COPY — UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)

Prepared by Lien Solutions, P.O. Box 29071,
Glendale, CA 91209-9071 Tel (800) 331-3282

# Fox Capital Group, Inc.
## SECURITY AGREEMENT AND GUARANTY

Merchant's Legal Name: **BETRA MFG. CO.**　　D/B/A: **SAME**

Physical Address: **45 AFFONSO DR**　　City **CARSON CITY**　　State **NV**　　Zip **89706**

Federal ID# **86-0876515**

### SECURITY AGREEMENT

**Security Interest.** This Agreement will constitute a security agreement under the Uniform Commercial Code. Merchant grants to FCG a security interest in and lien upon: (a) all accounts, chattel paper, documents, equipment, general intangibles, instruments, and inventory, as those terms are defined in Article 9 of the Uniform Commercial Code (the "UCC"), now or hereafter owned or acquired by Merchant, (b) all proceeds, as that term is defined in Article 9 of the UCC (c) all funds at any time in the Merchant's Account, regardless of the source of such funds, (d) present and future Electronic Check Transactions, and (e) any amount which may be due to FCG under this Agreement, including but not limited to all rights to receive any payments or credits under this Agreement (collectively, the "Secured Assets"). Merchant agrees to provide other security to FCG upon request to secure Merchant's obligations under this Agreement. Merchant agrees that, if at any time there are insufficient funds in Merchant's Account to cover FCG's entitlements under this Agreement, FCG is granted a further security interest in all of Merchant's assets of any kind whatsoever, and such assets shall then become Secured Assets. These security interests and liens will secure all of FCG's entitlements under this Agreement and any other agreements now existing or later entered into between Merchant, FCG or an affiliate of FCG is authorized to file any and all notices or filings it deems necessary or appropriate to enforce its entitlements hereunder.

This security interest may be exercised by FCG without notice or demand of any kind by making an immediate withdrawal or freezing the Secured Assets. Pursuant to Article 9 of the Uniform Commercial Code, as amended from time to time, FCG has control over and may direct the disposition of the Secured Assets, without further consent of Merchant. Merchant hereby represents and warrants that no other person or entity has a security interest in the Secured Assets. With respect to such security interests and liens, FCG will have all rights afforded under the Uniform Commercial Code, any other applicable law and in equity. Merchant will obtain from FCG written consent prior to granting a security interest of any kind in the Secured Assets to a third party. Merchant agrees that this is a contract of recoupment and FCG is not required to file a motion for relief from a bankruptcy action automatic stay to realize on any of the Secured Assets. Nevertheless, Merchant agrees not to contest or object to any motion for relief from the automatic stay filed by FCG. Merchant agrees to execute and deliver to FCG such instruments and documents FCG may reasonably request to perfect and confirm the lien, security interest and right of setoff set forth in this Agreement. FCG is authorized to execute all such instruments and documents in Merchant's name.

**Additional-Collateral.** To secure Guarantor's payment and performance obligations to FCG under the Guaranty, the Guarantor hereby grants FCG a security interest in _____

(the "Additional Collateral"). Guarantor understands that FCG will have a security interest in the aforesaid Additional Collateral upon execution of this Agreement.

Merchant and Guarantor each acknowledge and agree that any security interest granted to FCG under any other agreement between Merchant or Guarantor and FCG (the "Cross-Collateral") will secure the obligations hereunder and under the Merchant Agreement.

Merchant and Guarantor each agrees to execute any documents or take any action in connection with this Agreement as FCG deems necessary to perfect or maintain FCG's first priority security interest in the Collateral and the Additional Collateral, including the execution of any account control agreements. Merchant and Guarantor each hereby authorizes FCG to file any financing statements deemed necessary by FCG to perfect or maintain FCG's security interest, which financing statement may contain notification that Merchant and/or Guarantor have granted a negative pledge to FCG with respect to the Collateral, and the Additional Collateral, and that any subsequent lienor may be tortuously interfering with FCG's rights. Merchant and Guarantor shall be liable for, and FCG may charge and collect, all costs and expenses, including but not limited to attorney's fees, which may be incurred by FCG in protecting, preserving and enforcing FCG's security interest and rights.

**Negative Pledge.** Merchant and Guarantor each agrees not to create, incur, assume, or permit to exist, directly or indirectly, any lien on or with respect to any of the Collateral or the Additional Collateral, as applicable. Merchant agrees that any summons and/or complaint or other process to commence any litigation by Fox Funding LLC/ Fox Capital INC will be properly served if mailed by certified mail, return receipt requested, to the mailing address(es) listed on page 1 of this agreement.

**Consent to Enter Premises and Assign Lease.** FCG shall have the right to cure Merchant's default in the payment of rent on the following terms. In the event Merchant is served with papers in an action against Merchant for nonpayment of rent or for summary eviction, FCG may execute its rights and remedies under the Assignment of Lease. Merchant also agrees that FCG may enter into an agreement with Merchant's landlord giving FCG the right: (a) to enter Merchant's premises and to take possession of the fixtures and equipment therein for the purpose of protecting and preserving same; and/or (b) to assign Merchant's lease to another qualified business capable of operating a business comparable to Merchant's at such premises.

**Remedies.** Upon any Event of Default, FCG may pursue any remedy available at law (including those available under the provisions of the UCC), or in equity to collect, enforce, or satisfy any obligations then owing to FCG, whether by acceleration or otherwise.

Initials: _____ ⬅
Initials: _____ ⬅

# Fox Capital Group, Inc

## MERCHANT AGREEMENT

Agreement dated 05/22/2017 between Fox Capital Group, Inc. ("FCG") and the Merchant listed below ("MERCHANT")
(Month) (Day) (Year)

### MERCHANT INFORMATION

Merchant's Legal Name: BETRA MFG. CO.

D/B/A: SAME                                          State of Incorporation / Organization: NV

Type of Entity: Corporation

Physical Address: 45 AFFONSO DR        City: CARSON CITY    State: NV    Zip: 89706

Contact Name: SUZANNE D THOMAS        Contact Number: 

Mailing Address: 47 AFFONSO DR         City: CARSON CITY    State: NV    Zip: 89706

### PURCHASE AND SALE OF FUTURE RECEIVABLES

Merchant ("Merchant" or "Seller") hereby sells, assigns and transfers to FCG ("FCG" or "Buyer") (making FCG the absolute owner) in consideration of the funds provided ("Purchase Price") specified below, all of Merchant's future accounts, contract rights and other entitlements arising from or relating to the payment of monies from Merchant's customers' and/or other third party payors (the "Receipts" defined as all payments made by cash, check, electronic transfer or other form of monetary payment in the ordinary course of the Merchant's business), for the payments due to Merchant as a result of Merchant's sale of goods or services (the "Transactions") until the amount specified below (the "Purchased Amount") has been delivered by or on behalf of Merchant to FCG.

The Purchased Amount shall be paid to FCG by Merchant's irrevocably directing and authorizing that there be only one depositing bank account, which account must be acceptable to, and pre-approved by, FCG (the "Account") into which Merchant and Merchant's customers shall remit the percentage specified below (the "Specified Percentage") of the Merchant's settlement amounts due from each Transaction, until such time as FCG receives payment in full of the Purchased Amount. Merchant hereby authorizes FCG to ACH Debit the specified remittances from the merchant's Account on a daily basis and will provide FCG with all required access codes, and monthly bank statements. Merchant understands that it is responsible for ensuring that the specified percentage to be debited by FCG remains in the Account and will be held responsible for any fees incurred by FCG resulting from a rejected ACH attempt or an event of default. (See Appendix A) FCG is not responsible for any overdrafts or rejected transactions that may result from FCG's ACH debiting the specified amounts under the terms of this agreement. FCG will debit the specific daily amount each business day and upon receipt of the Merchant's monthly bank statements on or about the eighteenth day of each month reconcile the Merchant's Account by either crediting or debiting the difference from or back to the Merchant's Account so that the amount debited per month equals the specified percentage. FCG may, upon Merchant's request, adjust the amount of any payment due under this Agreement at FCG's sole discretion and as it deems appropriate. Notwithstanding anything to the contrary in this Agreement or any other agreement between FCG and Merchant, upon the violation of any provision contained in Section 1.11 of the MERCHANT AGREEMENT TERMS AND CONDITIONS or the occurrence of an Event of Default under Section 3 of the MERCHANT AGREEMENT TERMS AND CONDITIONS, the Specified Percentage shall equal 100%. A list of all fees applicable under this Agreement is contained in Appendix A.

Total Purchase Price: $ 105,000.00    Specified Percentage: 25  % Specific DAILY  Amount: $ 1,355.45    Total Purchased Amount: $ 149,100.00

THE MERCHANT AGREEMENT TERMS AND CONDITIONS SET FORTH ON PAGE 2, THE "SECURITY AGREEMENT AND GUARANTY" AND THE "ADMINISTRATIVE FORM HEREOF, ARE ALL HEREBY INCORPORATED IN AND MADE A PART OF THIS MERCHANT AGREEMENT.

**FOR THE MERCHANT (#1)**
By SUZANNE D THOMAS
(Print Name and Title)                        X _____ (Signature)    Sign Here

**FOR THE MERCHANT (#2)**
By _____
(Print Name and Title)                        X _____ (Signature)    Sign Here

**OWNER #1**
By SUZANNE D THOMAS
(Print Name)                                  X _____ (Signature)    Sign Here

**OWNER #2**
By _____
(Print Name)                                  X _____ (Signature)    Sign Here

Fox Capital Group, Inc. By
_____                             Sales Associate Name: _____
(Company Officer)                                                      (Signature)

FoxCapitalGroup | 140 Broadway | 46th Floor | New York | NY 10005 | (Ph) 212.971.9244 | (F) 866.557.0455                    Pg. 1 of 6

# Merchant Agreement Terms and Conditions

*[Body text illegible due to image resolution; two columns of dense terms and conditions covering sections I. TERMS OF ENROLLMENT IN PROGRAM, II. REPRESENTATIONS, WARRANTIES AND COVENANTS, III. EVENTS OF DEFAULT AND REMEDIES, and IV. MISCELLANEOUS.]*

Initials: SJT    Initials: SJT

# Fox Capital Group, Inc.

## GUARANTY

**Personal Guaranty of Performance.** The undersigned Guarantor(s) hereby guarantees to FCG, Merchant's good faith, truthfulness and performance of all of the representations, warranties, covenants made by Merchant in the Merchant Agreement in Sections thereof 2.3, 2.5, 2.6, 2.9, 2.10, 2.11, 2.12, 2.13 and 2.14, as each agreement may be renewed, amended, extended or otherwise modified (the "Guaranteed Obligations"). Guarantor's obligations are due at the time of any breach by Merchant of any representation, warranty, or covenant made by Merchant in the Agreement.

**Guarantor Waivers.** In the event of a breach of the above, FCG may seek recovery from Guarantors for all of FCG's losses and damages by enforcement of FCG's rights under this Agreement without first seeking to obtain payment from Merchant, any other guarantor, or any Collateral or Additional Collateral FCG may hold pursuant to this Agreement or any other guaranty.

FCG does not have to notify Guarantor of any of the following events and Guarantor will not be released from its obligations under this Agreement if it is not notified of: (i) Merchant's failure to pay timely any amount owed under the Merchant Agreement; (ii) any adverse change in Merchant's financial condition or business; (iii) any sale or other disposition of any collateral securing the Guaranteed Obligations or any other guaranty of the Guaranteed Obligations; (iv) FCG's acceptance of this Agreement; and (v) any renewal, extension or other modification of the Merchant Agreement or Merchant's other obligations to FCG. In addition, FCG may take any of the following actions without releasing Guarantor from any of its obligations under this Agreement: (i) renew, extend or otherwise modify the Merchant Agreement or Merchant's other obligations to FCG; (ii) release Merchant from its obligations to FCG; (iii) sell, release, impair, waive or otherwise fail to realize upon any collateral securing the Guaranteed Obligations or any other guaranty of the Guaranteed Obligations; and (iv) foreclose on any collateral securing the Guaranteed Obligations or any other guaranty of the Guaranteed Obligations in a manner that impairs or precludes the right of Guarantor to obtain reimbursement for payment under this Agreement. Until the Merchant Amount plus any accrued but unpaid interest and Merchant's other obligations to FCG under the Merchant Agreement and this Agreement are paid in full, Guarantor shall not seek reimbursement from Merchant or any other guarantor for any amounts paid by it under this Agreement. Guarantor permanently waives and shall not seek to exercise any of the following rights that it may have against Merchant, any other guarantor, or any collateral provided by Merchant or any other guarantor, for any amounts paid by it, or acts performed by it, under this Agreement: (i) subrogation; (ii) reimbursement; (iii) performance; (iv) indemnification; or (v) contribution. In the event that FCG must return any amount paid by Merchant or any other guarantor of the Guaranteed Obligations because that person has become subject to a proceeding under the United States Bankruptcy Code or any similar law, Guarantor's obligations under this Agreement shall include that amount.

**Guarantor Acknowledgement.** Guarantor acknowledges that: (i) He/She understands the seriousness of the provisions of this Agreement; (ii) He/She has had a full opportunity to consult with counsel of his/her choice; and (iii) He/She has consulted with counsel of its choice or has decided not to avail himself/herself of that opportunity.

**Joint and Several Liability.** The obligations hereunder of the persons or entities constituting Guarantor under this Agreement are joint and several.

THE TERMS, DEFINITIONS, CONDITIONS AND INFORMATION SET FORTH IN THE "MERCHANT AGREEMENT", INCLUDING THE "TERMS AND CONDITIONS", ARE HEREBY INCORPORATED IN AND MADE A PART OF THIS SECURITY AGREEMENT AND GUARANTY. CAPITALIZED TERMS NOT DEFINED IN THIS SECURITY AGREEMENT AND GUARANTY, SHALL HAVE THE MEANING SET FORTH IN THE MERCHANT AGREEMENT, INCLUDING THE TERMS AND CONDITIONS.

**MERCHANT #1**

By **SUZANNE D THOMAS**
(Print Name and Title)

SS# 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

X _____ (Signature)  < Sign Here

Driver's License Number _____

**MERCHANT #2**

By _____
(Print Name and Title)

SS# _____

X _____ (Signature)  < Sign Here

Driver's License Number _____

**OWNER/GUARANTOR #1**

**SUZANNE D THOMAS**
(Print Name)

SS# 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

X _____ (Signature)  < Sign Here

Driver's License Number _____

**OWNER/GUARANTOR #2**

_____
(Print Name)

SS# _____

X _____ (Signature)  < Sign Here

Driver's License Number _____